GARY M. RESTAINO
United States Attorney
District of Arizona
ARON KETCHEL
Assistant U.S. Attorney
Arizona State Bar No. 250345
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: aron.ketchel@usdoj.gov
Attorneys for Plaintiff

☐ FILED ☒ LODGED
May 31 2023
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

vs.

Diana Marie Moore,

Defendant.

No. 23-0040-01-PHX-SMB

**PLEA AGREEMENT**

Plaintiff, United States of America, and the defendant, Diana Marie Moore, hereby agree to resolve this matter on the following terms and conditions:

**1. PLEA**

The defendant will plead guilty to Counts 1 and 2 of the indictment charging the defendant with, respectively, a violation of 18 United States Code (U.S.C.) § 1343, wire fraud, a Class C felony offense, and 18 U.S.C. 1957, money laundering, a Class C felony offense.

**2. MAXIMUM PENALTIES**

a. A violation of 18 U.S.C. § 1343 is punishable by a maximum fine of $250,000, or twice the gross gain or gross loss from the offense, whichever is greatest, a maximum term of imprisonment of twenty years, or both, and a term of supervised release of three years. A maximum term of probation is five years (including a minimum term of one year if probation is imposed).

b. A violation of 18 U.S.C. § 1957 is punishable by a maximum fine of $250,000, or twice the gross gain or gross loss from the offense, whichever is greatest, a maximum term of imprisonment of ten years, or both, and a term of supervised release of three years. A maximum term of probation is five years (including a minimum term of one year if probation is imposed).

c. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

d. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3. <u>AGREEMENTS REGARDING SENTENCING</u>**

a. Recommendation. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend that the defendant's sentence shall not exceed the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a).

b. Non-Binding Recommendations. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the

defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

c. Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $23,000,000, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

d. Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

e. Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of

responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4. AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a. This office shall not prosecute the defendant for any other offenses committed by the defendant, and known by the United States, in connection with fraud committed against the Arizona Health Care Cost Containment System ("AHCCCS") between 2020 and 2022.

b. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6. WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**7. DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8. FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

b. The defendant agrees to forfeit, and hereby forfeits, all interest in any asset that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of the offense(s), or which was used to facilitate the commission of the offense(s), including the real property described below as well as the property described in Exhibit 1 to this plea agreement, which is incorporated herein by reference.

(1) The real property located at 1752 East Menlo Street, Mesa, Arizona, 85203;

(2) The real property located at 5645 Whitner Drive, Atlanta, Georgia 30327-4746;

(3) The real property at 8112 Hercules Drive, Las Vegas, Nevada 89128-2013; and

(4) The real property at 6329 Snap Ridge Street, Unit 3, North Las Vegas, Nevada, 89081

c. The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

d. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

e. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

f. The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant further agrees that he/she will not contest civil, administrative or judicial forfeiture of the listed

property. The defendant agrees to waive his/her right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

g. The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

h. The defendant hereby waives and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above. Without limitation, the defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

**9. ELEMENTS**

**18 U.S.C. § 1343 (Wire Fraud)**

Between in or about August, 2019, and January 2023, in the District of Arizona:

1. the defendant knowingly devised or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

2. the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

4. the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

**18 U.S.C. § 1957 (Transactional Money Laundering)**

On or about February 26, 2021, in the District of Arizona:

1. the defendant knowingly engaged or attempted to engage in a monetary transaction;

2. the defendant knew the transaction involved criminally derived property;

3. the property had a value greater than $10,000;

4. the property was, in fact, derived from Wire Fraud; and

5. the transaction occurred in the United States.

**10. FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

b. The Arizona Health Care Cost Containment System ("AHCCCS") is Arizona's Medicaid agency that offers health care programs to serve Arizona residents. In order for an Arizona resident to receive care through AHCCCS, the resident must enroll in AHCCCS, at which point the resident receives an AHCCCS identification number (an "AHCCCS Enrollee"). In order for a health care provider to provide services to AHCCSS Enrollees, a provider must submit an application form to AHCCCS. During the relevant time period, the AHCCCS provider application form required, in part, that the applicant identify all individuals with an ownership or financial interest in the applicant provider and also disclose prior criminal history for such individuals under certain circumstances. Once AHCCCS approves a provider's application, the provider may begin providing services to AHCCCS Enrollees and submitting claims for payments to AHCCCS for services rendered.

In August 2019, defendant Diana Moore ("defendant") submitted a provider enrollment application package to AHCCCS for Harmony Family Services (the "2019 HFS

Application"). The 2019 HFS Application sought permission for HFS to operate a behavioral health counseling center located in Mesa, Arizona, and to bill AHCCCS for services rendered to AHCCCS Enrollees. In the 2019 HFS Application, defendant falsely stated that individuals with the initials J.T. and D.E. were the owners of HFS even though defendant knew at the time that she was the sole owner of HFS. Defendant intentionally did not disclose her ownership in HFS because she was concerned that disclosing her prior criminal record would cause AHCCCS to deny HFS's application. AHCCCS approved the 2019 HFS Application in November 2019, and HFS then began submitting claims for payment to AHCCCS.

In July 2020, defendant submitted a provider enrollment application package to AHCCCS for Harmony Family Services II (the "2020 HFS II Application"). The 2020 HFS II Application sought permission for HFS II to operate a behavioral health counseling center located in Gilbert, Arizona, and to bill for services rendered and receive payments from AHCCCS. Similar to the 2019 application, in the 2020 HFS II Application, defendant falsely stated that J.T. was the 100% owner of HFS II even though defendant knew at the time that she was the sole owner of HFS II. AHCCCS approved the 2020 HFS II Application in August 2020, and HFS II began to submit claims for payment to AHCCCS.

After intentionally submitting false information on the application forms for both HFS and HFS II, defendant further engaged in a fraudulent billing scheme targeting AHCCCS. Specifically, starting in January 2020, defendant began obtaining AHCCCS identification numbers for AHCCCS Enrollees by, in part, paying other providers to transport AHCCCS Enrollees to the HFS or HFS II facility for a single day and obtaining the identification number from the AHCCCS Enrollees once they arrived. After these AHCCCS Enrollees left the HFS or HFS II facility, defendant would submit bills to AHCCCS, which falsely claimed that HFS and HFS II continued providing services to those same AHCCCS Enrollees for a period of time extending up to ninety days. Defendant regularly claimed that HFS or HFS II provided counseling services to a given AHCCCS Enrollee for eight or more hours each day, five days a week, for months in a row, even

though defendant knew such services were not provided. In addition, defendant submitted claims to AHCCCS, which falsely claimed that HFS or HFS II provided services to certain AHCCCS Enrollees who were, in fact, deceased or imprisoned at the time defendant claimed to have provided services.

On December 29, 2020, defendant submitted a claim through the internet portal for AHCCCS seeking payment from AHCCCS for $71,156.24. The submission through the online portal traveled interstate. Defendant knew at the time that she submitted the claim on December 29, 2020, that she was not entitled to the payment she sought from AHCCCS. On February 26, 2021, defendant, while located in Arizona, transferred $100,000 in funds that she fraudulently obtained from AHCCCS to a JP Morgan Chase Bank account defendant controlled, ending in -7111.

In October 2022, defendant submitted a fax to AHCCCS containing a provider enrollment application package for Logan Family Health, LLC ("LFH"). AHCCCS approved LFH as a behavioral health provider in November 2022. Defendant established LFH knowing that LFH would submit fraudulent claims to AHCCCS in which LFH sought payment from AHCCCS for services that LFH did not actually provide.

Between approximately January 2020, and January 2023, as a result of fraudulent claims submitted on behalf of HFS, HFS II, and LFH, AHCCCS paid the following amounts:

| | |
|---|---|
| HFS – | $12,357,438.22 |
| HFS II – | $9,366,234.72 |
| LFH – | $738,233.26 |
| **Total:** | **$22,461,906.20** |

The property identified for forfeiture in this plea agreement and in Exhibit 1 to the plea agreement constitute proceeds of defendant's fraudulent claims and/or was involved in one or more transactions in violation of 18 U.S.C. § 1957.

c. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any

intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

5/25/2023
Date

Diana Marie Moore
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide

effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

5-26-23
Date

Richard J. Suzuki
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GARY M. RESTAINO
United States Attorney
District of Arizona

5/26/23
Date

ARON KETCHEL Digitally signed by ARON KETCHEL Date: 2023.05.26 14:43:54 -07'00'

ARON KETCHEL
Assistant U.S. Attorney

**ACCEPTANCE BY THE COURT**

Date

Honorable SUSAN M. BRNOVICH
United States District Judge

EXHIBIT 1

PROPERTY TO BE FORFEITED BY DEFENDANT PURSUANT TO PLEA AGREEMENT

1. 2017 Cadillac Escalade, VIN: 1GYS3CKJ4HR365127
2. 2017 Mercedes Benz GLS 550 4MATIC, VIN: 4JGDF7DE1HA932367
3. 2018 Mercedes Benz E-Class, VIN: WDDZF4JB4JA374545
4. 2020 Cadillac Escalade 4WD, VIN: 1GYS4DKJ1LR167505
5. 2020 Mercedes Benz AMG GT, VIN: WDD7X8KB4LA014396
6. 2020 Mercedes Benz S560X4 Maybach, VIN: W1KUX8GB9LA551521
7. 2021 Land Rover Range Rover, VIN: SALGS2RU4MA446316
8. $217,090.93 seized from Bank of America checking account ending 5501
9. $9,999.76 seized from Delta Community Credit Union checking account ending 9877
10. $79.36 seized from Delta Community Credit Union money market account ending 4560
11. $37.40 seized from Delta Community Credit Union savings account ending 0150
12. $6,888.92 seized from Truist Bank business checking account ending 7763
13. $30,000.00 in United States currency
14. $5,000.00 in United States currency
15. $100,000.00 Wells Fargo cashier's check payable to Moore Development Company LLC
16. Brown Gucci Diana medium top handle bag
17. Black Gucci Marmont small shoulder bag
18. Black Louis Vuitton Pont 9 shoulder bag
19. Pink Louis Vuitton Zippy wallet monogram python
20. Pink Versace crystal virtus shoulder bag
21. Purple Louis Vuitton Coussin belt bag
22. Pink Chanel mini flap bag
23. Black Christian Dior Lady Dior phone holder
24. Brown Louis Vuitton Passy handbag
25. Red Louis Vuitton Capucines mini handbag
26. Brown Coach Madison shoulder bag
27. Blue/Pink Fendi peekaboo mini handbag

28. Red Rapport Brompton three-watch roll
29. Black Balmain B-Buzz 23 bag
30. Black Prada mini nylon pouch
31. Red Christian Dior Cannage Lady Dior large bag
32. Black Versace Grecca Goddess shoulder bag
33. Brown Louis Vuitton multi-Pochette bag
34. Red/Pink Gucci Dionysus small shoulder bag
35. Cream/Rose Louis Vuitton Empreinte double zip Pochette
36. Black Louis Vuitton monogram ink vanity case
37. Brown Louis Vuitton Alma BB handbag
38. Red Fendi peekaboo Iseeu tote
39. Brown/Green/Black Louis Vuitton fold tote bag
40. Brown Louis Vuitton petite malle souple
41. Green Gucci GG Marmont small shoulder bag
42. Black Versace La Medusa micro bag
43. White Cartier panther tote
44. Pink/Purple Louis Vuitton pastel giant ONTHEGO Escale GM tote
45. Brown Gucci GG Supreme Linea A chain hobo
46. Brown Louis Vuitton since 1854 Neverfull MM
47. Red/Black/Blue Hermes repainted Birkin 35
48. Black Louis Vuitton EPI Neverfull MM tote
49. Orange/White Louis Vuitton monogram crafty Neverfull MM
50. Red/White Louis Vuitton monogram crafty ONTHEGO GM tote
51. Black Off-White logo-print belt bag
52. Beige/White Louis Vuitton Taurillon Artycapucines Henry Taylor
53. Beige/Pink Louis Vuitton Fall for you speedy Bandouliere 25
54. Black/White Fendi X Marc Jacobs Roma Capsule baguette
55. Black Louis Vuitton multiple wallet
56. Beige Louis Vuitton Victorine wallet

57. Black/Brown Louis Vuitton City Steamer XXL
58. Black Louis Vuitton 2054 Mountain backpack
59. Brown/Red Louis Vuitton Keepall Bandouliere 50
60. Brown Louis Vuitton Damier Ebene Keepall 55 Bandouliere
61. Yellow Gucci GG embossed perforated backpack
62. Yellow Gucci GG embossed perforated belt bag
63. Floral Beige/Black/Pink Christina Dior large book tote
64. White Fendi leather wide shoulder strap
65. Black Gucci leather shoulder strap
66. Brown Versace leather shoulder strap
67. Brown Gucci fabric shoulder strap
68. Louis Vuitton Louise by Night costume bracelet
69. Rolex stainless steel and 18k rose gold oyster bracelet watch
70. Louis Vuitton LV Volt Upside Down pendant necklace
71. Rolex steel and 18k rose gold watch
72. 10k yellow gold and diamond ring
73. 10k white gold and diamond necklace
74. 14k bicolored gold and diamond bracelet
75. Roberto Coin 18k yellow gold and diamond lattice bracelet
76. Cartier 18k rose gold diamond love bracelet
77. 14k yellow gold bracelet
78. David Yurman 18k yellow gold necklace
79. 18k rose gold diamond ring
80. Louis Vuitton LV Volt Upside Down 18k yellow gold diamond ear pendants
81. 14k rose gold diamond spider ring
82. 14k rose gold diamond ring band
83. Louis Vuitton 18k white gold and diamond Dentelle ring
84. 18k white gold diamond ring
85. Louis Vuitton hard-sided jewelry case

86. Icebox blue leather jewelry case
87. Rolex Sky Dweller bracelet watch
88. Rolex 18k rose gold diamond oyster bracelet watch
89. Gold bar diamond pendant
90. Icebox 14k white gold diamond Miami Cuban necklace
91. Chanel costume brooch
92. 10k yellow gold diamond Baby Dee pendant necklace
93. Rolex 18k yellow gold diamond bracelet watch
94. Judith Ripka 18k yellow gold, blue topaz diamond ring
95. Cartier 18k yellow gold diamond Juste Un Clou ring
96. 14k white gold diamond men's ring band
97. 10k yellow gold diamond bent nail bangle bracelet
98. 18k white gold diamond ear hoops
99. Rolex stainless steel bracelet watch
100. 10k yellow gold diamond pendant necklace
101. 10k white gold diamond necklace
102. Louis Vuitton 18k white gold diamond Color Blossom bracelet
103. 18k white gold diamond ear hoops
104. Bulgari 18k yellow gold, diamond, rubellite tourmaline Serpenti Seduttori bracelet
105. 14k bicolored gold diamond necklace
106. Gucci pink topaz 18k white gold Running G bracelet
107. Rolex 18k yellow gold bracelet watch
108. 18k white gold diamond ear hoops
109. Versace crystal Medusa Treasury decanter
110. 14k white gold, diamond and citrine pendant necklace
111. Erte - Mermaid, 1990 (statue)
112. Erte - Number One, 1988 (statue)
113. Erte - The Wave, 1988 (statue)
114. Erte - Firebird, 1980 (statue)

115. Erte - La Plume, 1980 (statue)
116. Erte - Amants, 1980 (statue)
117. AtZ - Maybach (painting)